**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **THOMAS STALLINGS,**          ) <br> ) <br> **Plaintiff,**          ) <br> ) <br> v.          ) <br> ) <br> **WERNER ENTERPRISES, INC., and**          ) <br> **STUART J. COHEN,**          ) <br> ) <br> **Defendants.**          ) <br> ) <br> _____) | **Case No. 07-1387-WEB** |

## **MEMORANDUM AND ORDER**

This matter is before the court on (1) plaintiff's motion to compel (Doc. 30) and (2) an *in camera* review of documents submitted by Werner. The court's rulings are set forth below.

### **Background**

The genesis of this case is a multi-vehicle collision that occurred on December 27, 2007. Highly summarized, plaintiff alleges that he was driving his minivan on U.S. Highway 400 in Butler County, Kansas when he stopped behind a line of vehicles waiting for the lead vehicle to make a left-hand turn. Stuart Cohen, an independent contractor, was driving a Werner owned tractor-trailer in the same direction as plaintiff. Cohen failed to stop his truck

and collided with the rear of plaintiff's vehicle. Plaintiff asserts various theories of negligence against both Werner and Cohen.

## Motion to Compel

James Mullen and Nathan Meisgeier, in-house counsel for Werner, met with Cohen in Werner's Omaha office two days after the collision (December 29, 2006) as part of an investigation into the accident. According to Mullen, "the primary motivating purpose behind [Mullen's] meeting with Mr. Cohen was to learn facts from Mr. Cohen that would aid Werner in defending future litigation by the occupants of the vehicles." Meisgeier took notes of the meeting that (1) set forth information communicated by Mr. Cohen pertinent to liability issues and (2) also contain his mental impressions, conclusions and opinions with regard to liability information. As explained in greater detail below, plaintiff's motion seeks to compel discovery related to the December 29 meeting.

### Deposition Question

Cohen explained during his deposition that he traveled to Omaha on December 29 and met with Werner's in-house counsel. After some preliminary questions about the meeting, plaintiff's counsel ask Cohen: "All right. Then so what– what's the subject of the conversation?" Defense counsel objected that the question was "completely within the attorney-client privilege." Plaintiff moves to compel an answer to the deposition question, arguing that the conversation is not protected by the attorney-client privilege.

The standards for evaluating the attorney-client privilege are well established. "In federal court, the determination of what is privileged depends upon the dictates of Rule 501 of the Federal Rules of Evidence." ERA Franchise System, Inc., v. Northern Ins. Co. of New York, 183 F.R.D. 276, 278 (D. Kan. 1998)(quoting Fisher v. City of Cincinnati, 753 F. Supp. 692, 694 (S.D. Ohio 1990). Because subject matter jurisdiction in this case is based on diversity and "state law supplies the rule of decision," the attorney-client privilege is determined in accordance with Kansas law. Fed. R. Evidence 501.

Under Kansas law, the essential elements of the attorney-client privilege are:

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.

ERA Franchise at 278, (citations omitted); Cypress Media, Inc. v. City of Overland Park, 997 P.2d 681, 689 (Kan. 2000)(citations omitted). The existence of the privilege is determined on a case-by-case basis. See Upjohn Co. v. United States, 449 U.S. 383, 396-97 (1981). The party objecting to discovery on the basis of the privilege bears the burden of establishing that it applies. Boyer v. Board of County Commissioners, 162 F.R.D. 687, 688 (D. Kan. 1995). Moreover, a party must make a "clear showing" that the privilege applies. Ali v. Douglas Cable Communications, 890 F. Supp. 993, 994 (D. Kan. 1995).

Defendants take the position that Cohen was an "independent contractor." Because of that, plaintiff argues there is no evidence that (1) Cohen sought out an attorney, (2) requested legal advice, or (3) that in-house counsel acted in Cohen's interests when they

interviewed him.  Werner concedes that Cohen did not seek legal counsel and the December 29 conversation was not for the purpose of providing legal advice to Cohen.  However, Werner argues that Cohen's conversation with counsel is privileged because Cohen was an "authorized representative of the client."  See K.S.A. 60-426(c) (defining the term "client" as a "person or corporation or other association that directly or through an authorized representative, consults a lawyer....")(emphasis added).  See also, Western Resources, Inc., v. Union Pacific Railroad, No. 00-2043, 2002 WL 181494 (D. Kan. January 31, 2002)(consultant qualified as authorized representative of the company for purposes of attorney-client privilege).

Werner's argument that Cohen was an "authorized representative" when he conversed with counsel on December 29, 2006 is not persuasive because, according to both Cohen and Werner, Cohen was an "independent contractor" at the time of the collision.  More importantly, the operating agreement between Cohen and Werner provides:

> The CONTRACTOR, the CONTRACTOR'S employees, and the EQUIPMENT operators  are not to be considered the employees, agents, or servants of the CARRIER *at any time, under any circumstances, or for any purpose.*

Werner's assertion that Cohen was an "authorized representative" on December 29 is inconsistent with the contractual provision that Cohen would not be considered Werner's agent "at any time, under any circumstances, or for any purpose."

Werner's citation to Judge Waxse's ruling in Western Resources, Inc. v. Union Pacific Railroad is also not persuasive.  In Western Resources, Judge Waxse concluded that a

consultant hired by Western Resources (WR) to assist counsel qualified as an "authorized representative" for purposes of the attorney-client privilege. Id.[1] However, unlike this case, the "independent contractor" in Western Resources was an expert in "areas of coal transportation, coal supply economics, procurement and contract issues" and "provided technical advice to WR's attorneys so the attorneys could, in turn, provide legal advice to WR" prior to the filing of the lawsuit. Western Resources, at *1.[2] Judge Waxse found, "under the specific facts presented," that the expert's communications with plaintiff's counsel were made in confidence for the purpose of obtaining legal advice from a lawyer and were therefore protected by the attorney-client privilege. Id. at *7.

In this case there is no evidence that Stuart Cohen was retained to provide technical advice or expertise to Werner's in-house attorneys; he was merely one of a number of factual witnesses to the accident. Equally important, there is also no evidence that Cohen was aware that his communication with in-house counsel on December 29 was of a confidential nature.[3] Under the circumstances, Werner has failed to carry its burden of establishing the attorney-

---

[1] Judge Waxse's ruling was based in large part on the Eighth Circuit's analysis in In re Bieter, 16 F. 3d 929 (8th Cir. 1994). In Bieter, the real estate consultant "had extensive involvement and communication with Bieter's attorneys, and the evidence presented established that it was the intent of Bieter, the consultant and the attorneys that the communications were intended to be confidential." Western Resources, at *6.

[2] The independent consultant had provided confidential consulting services to WR dating back to the 1970's and was also designated as an expert witness in the case.

[3] Cohen testified that he "had no idea" why he was asked to travel to Werner's Omaha office but suspected it had something to do with the collision.

-5-

client privilege concerning the December 29 conversation between Cohen and Werner's in-house counsel. Accordingly, plaintiff's motion to compel Cohen to answer the deposition question concerning the December 29 meeting shall be **GRANTED.**

**In-House Counsel Notes**

Plaintiff moves to compel any notes, documents or statements in Werner's possession concerning the December 29 Omaha meeting. Werner opposes the motion, arguing that the notes created by in-house counsel during the meeting with Cohen are protected by the attorney-client privilege and work product doctrine. As noted above, the court rejects Werner's claim that the December 29 communications between Cohen and in-house counsel are protected by the attorney-client privilege; therefore the notes memorializing the conversation are not protected by the attorney-client privilege. The work product doctrine is discussed below.

As a preliminary matter, the court addresses the parties' "waiver" arguments concerning the work product discovery dispute. Werner contends that plaintiff waived his right to compel by failing to file his motion within 30 days of Werner's March 31, 2008 response. See D. Kan. Rule 37.1 (motion to compel discovery shall be filed within 30 days of the default or service of the response). The court does not agree. Werner's discovery response was less than clear that it was withholding notes from production. Plaintiff learned of the possible existence of such notes during Cohen's deposition and thereafter filed a motion within 30 days to compel production. Under the circumstances, the court rejects

Werner's argument that plaintiff's motion is untimely under local rule 37.1(b).

Plaintiff similarly argues that Werner waived any claim of work product by failing to provide a privilege log indicating that the December 29 notes were protected by the work product doctrine. Production Request No. 6, the discovery request in issue, asked for:

> Complete and clearly readable copies of all objects, photographs, drawings, reports, statements or otherwise described documents or objects in the possession of any of the defendants in reference to the accident as defined herein ***excluding only those written documents, materials and objects that can be clearly identified as the work product of the defendant's attorneys.*** This specifically includes any and all reports and written or electronically recorded statements made by any of the defendants to any other person, organization or governmental entity. (Emphasis added).

However, plaintiff's instruction to ***exclude*** defense counsel's work product creates some ambiguity as to whether a privilege log listing work product was necessary. Because of ambiguity in the production request, the court rejects plaintiff's argument that Werner waived the work product doctrine by failing to list counsel's notes in a privilege log.

Proceeding to the merits of the parties' arguments, the court is satisfied that the notes were created by Werner's counsel in anticipation of litigation and qualify as work product. The court is also persuaded that plaintiff has shown a substantial need for the statements taken from Cohen two days after the accident as evidenced by Cohen's memory lapses

during his June 12, 2008 deposition.[4]  However, because the notes apparently contain both Cohen's statements and counsel's mental impressions and conclusions, the court will require production of the notes *in camera* for a determination of whether counsel's impressions and conclusions can be separated from Cohen's statements.

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel **(Doc. 30)** is **GRANTED IN PART** and Cohen shall answer the deposition question and any pertinent followup questions on or before **September 5, 2008.**

**IT IS FURTHER ORDERED** that Werner shall produce the notes taken during the December 29 meeting for an *in camera* review by **September 5, 2008.**

### In Camera Review of Werner's Investigation File

Pursuant to an earlier order (Doc. 29), Werner submitted documents from its investigation file for an *in camera* review to determine whether certain redactions contained the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation.  The court has viewed the redactions and finds that only the paragraphs redacted from pages 0752 and 0755 of plaintiff's exhibit (Doc. 26-2)

---

[4] Werner argues a "substantial need" has not been shown because plaintiff has a copy of the motor vehicle accident report prepared by the sheriff's department containing Cohen's statement.  Apparently, Werner refers to the officer's statement that the driver of the truck said "he could not stop in time."  This single statement is vague and sheds no light on the reason Cohen was unable to stop; thus, plaintiff has a need for any reports or statements from Cohen providing details.

qualify as the mental impressions, conclusions, opinions, or legal theories of counsel; therefore, those two redacted paragraphs need not be produced. All other redactions shall be produced on or before **September 5, 2008.**[5]

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 28th day of August 2008.

S/<u>Karen M. Humphreys</u>
KAREN M. HUMPHREYS
United States Magistrate Judge

---

[5] The redactions are not well marked, making it difficult to identify the material with precision. For clarification, the paragraphs which may be withheld are titled "Liability." The paragraphs which shall be produced to plaintiff contain Cohen's interview explanation of what happened.