IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THOMAS STALLINGS,              ) | |
|                      ) | |
|        Plaintiff,      ) | |
|                      ) | |
| v.                     ) | No.  07-1387-WEB |
|                      ) | |
| WERNER ENTERPRISES, INC., and  ) | |
| STUART J. COHEN,         ) | |
|                      ) | |
|        Defendants.    ) | |

**<u>Memorandum and Order</u>**

Plaintiff Thomas Stallings alleges that on December 27, 2006, defendant Stuart Cohen negligently injured him in a vehicle collision on Highway 400 in Butler County, Kansas. According to the second amended complaint,  plaintiff's vehicle and a pickup truck were both stopped behind a semi-tractor that was making a left turn, when a semi-tractor/trailer driven by Cohen ran into the back of plaintiff's minivan.  Plaintiff alleges that the vehicle driven by Cohen was owned by defendant Werner Enterprises, Inc., and that Cohen was an employee of Werner acting within the scope of his employment at the time of the accident.  Alternatively, plaintiff alleges that Cohen was an independent contractor for Werner.  In either event, plaintiff contends Werner is responsible for the alleged negligence of defendant Cohen.  Plaintiff further alleges that Cohen drove in a "negligent, grossly negligent, reckless, and wanton manner" and that defendant Werner negligently hired Cohen, negligently retained him, and negligently entrusted the vehicle to Cohen when it knew or should have known that he was an unsafe driver.  Plaintiff seeks both compensatory and punitive damages.

The matter is now before the court on three motions for partial summary judgment by

defendant Werner Enterprises.  The court finds that oral argument would not assist in deciding the issues presented.

The court has jurisdiction of the action by virtue of 28 U.S.C. § 1332. The substantive law of Kansas governs the dispute. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (in diversity actions, federal court must apply the substantive law of the forum state); *Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731 (1985) (on tort claims, Kansas follows the rule of lex loci delicti, which means the law of the place of the wrong controls).

I. *Negligent Entrustment Claim*.

Defendant Werner first argues that plaintiff's negligent entrustment claim fails as a matter of law because Werner had no ownership interest in the vehicle operated by Cohen.  Doc. 63 at 1.  Werner cites a Nebraska certificate of title for the 2001 Freightliner tractor truck driven by Cohen at the time of the accident.  *Id*., Exh. A.  The title lists Cohen as the owner of the vehicle.  The purchase date was November 14, 2003.  The certificate also states that the previous owner was Werner Enterprises, Inc., and indicates Werner is a lienholder on the vehicle.  Werner argues the plaintiff must produce some evidence that Werner owned the vehicle at the time of the collision in order to support a negligent entrustment claim.  Doc. 63 at 3-4.

In response, plaintiff does not dispute that the tractor was owned by Cohen, but points out that the trailer Cohen was hauling was owned solely by defendant Werner.  Doc. 68 at 1.  Plaintiff argues that the "vehicle" was composed of two parts – the tractor and the trailer – and says the fact that Werner did not own the tractor does not preclude a negligent entrustment claim.  *Id*. at 2.  Plaintiff notes that under Kansas law, control over the vehicle, not ownership, is the key for determining whether a claim of negligent entrustment lies, and plaintiff says Werner

2

"had control over whether it would entrust its trailer to Cohen to make deliveries." *Id*.  Plaintiff

further cites deposition testimony to the effect that a Werner sign appeared on both the trailer

and the tractor; that the sign was an indication the driver was "operating under Werner

Enterprise's authority"; that defendant Werner had the right to terminate Cohen's contract; that

Werner encourages drivers to keep Werner's trailer with them, so the trailer will be available

when it is time to pick up another load; and that the tractor has a sign on it stating it is "leased to

Werner Enterprises" because all permits needed to transport loads are in Werner's name.  *Id*. at

3-5.   Plaintiff has also filed a supplemental response seeking to add additional facts.  Included in

those facts are assertions that the contract between Werner and Cohen includes a provision

granting Werner the exclusive possession, use and control of equipment that Werner may require

to fulfill its regulatory requirements, and that the contract's description of equipment includes

the tractor owned by Cohen.  Doc. 71 at 1-2.  Plaintiff further asserts the contract is subject to the

Federal Motor Carrier Safety Regulations (FMCSR), and that such regulations provide that a

carrier with a lease to use equipment it does not own – such as Cohen's tractor – may only do so

when the carrier lessee has exclusive possession, control, and use of the equipment for the

duration of the lease.  *Id*. (*Citing* 49 C.F.R. § 376.12).  Plaintiff thus contends Werner is deemed

to have control over the tractor for purposes of a theory of negligent entrustment.

In its reply, Werner notes plaintiff has not cited any case law showing that ownership of a

trailer alone will support a claim of negligent entrustment.  Defendant further argues that the

separate titles for the tractor and the trailer show the two are in fact separate vehicles.  Doc. 79 at

3.  Werner contends that *Wheat v. Kinslow,* 316 F.Supp.2d 944 (D. Kan. 2003) makes clear that a

defendant's ownership in a "motor vehicle" is essential for liability under a negligent

entrustment theory, and defendant says the trailer alone cannot be considered a motor vehicle.
As for Werner's alleged right to exercise control over Cohen, Werner argues that Cohen had a
right to refuse any particular assignment, and thus "Cohen, not Werner, had a superior right of
control over the subject tractor." Doc. 79 at 6.[1]  Finally, Werner argues that plaintiff's use of a
negligent entrustment theory is solely for the purpose of bringing in "highly prejudicial character
evidence relating to Defendant Cohen's character," which defendant says will allow plaintiff "to
recover twice for the same car wreck." Doc. 79 at 8.  Werner says it has admitted "that it is
vicariously liable for Cohen's actions in causing the car wreck," and argues it is improper for
plaintiff to pursue recovery under both *respondeat superior* and negligent entrustment theories.
*Id* at 10.

   *Discussion*.

   In Kansas, the general rule is that "a claim of negligent entrustment is based upon
knowingly entrusting, lending, permitting, furnishing, or supplying an automobile to an
incompetent or habitually careless driver." *Snodgrass v. Baumgart*, 25 Kan.App.2d 812, 974
P.2d 604, 606 (1999) (*quoting McCart v. Muir*, 230 Kan. 618, 620, 641 P.2d 384 (1982)).  As

---

[1] Werner argues the court should not consider the additional facts and argument in
plaintiff's "supplemental response" because plaintiff did not obtain leave of court to file the
additional brief and because it does not otherwise comport with the federal rules.  Doc. 79 at 5,
n. 1.  If the court does consider the supplement, Werner "requests leave of Court to file a further
reply brief addressing the new matter raised in Plaintiff's supplemental brief." *Id.*
   Although Werner is correct as a technical matter that plaintiff should have sought leave
of court, the supplement is based primarily upon the contract between the parties and the federal
regulations.  There is clearly no dispute that this contract was in effect.  Werner itself cites the
contract in support of its own arguments. *See e.g.,* Doc. 79 at 6.  Moreover, Werner has
identified no prejudice from the filing of the supplement.  It was filed over two weeks before
Werner filed its reply, and Werner has had sufficient time to address it.  Under the
circumstances, the court will not disregard uncontroverted facts and applicable law where no
substantial prejudice would result.

stated in *Snodgrass*, the rule is derived from Restatement of Torts (Second) § 308, which provides: "It is negligence to permit a third person to use a thing ... which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing ... in such a manner as to create an unreasonable risk of harm to others."[2]  The rule is most frequently applied where the third person is a member of a class that is notoriously likely to misuse the thing entrusted, but it also applies if the third person's known character or the peculiar circumstances of the care are such as to give the actor good reason to believe that the third person may misuse the thing.  *See* Restatement (Second) of Torts § 308, comment b.  "The vast majority of the cases are where the owner has permitted a known reckless or incompetent person to use his or her vehicle."  *Estate of Pemberton v. John's Sports Center, Inc*., 25 Kan.App.2d 809, 830, 135 P.3d 174 (2006).

Negligent entrustment of a vehicle has only been allowed in Kansas when the entruster has a superior right to control or possession of the vehicle.  *See Snodgrass,* 35 Kan.App.2d at 814.  Thus, in *Snodgrass* no claim existed where a husband entrusted a car to his allegedly intoxicated wife, because the husband and wife were co-owners of the car and were entitled to equal use and possession of the vehicle.  *Id.* at 815-16.  *See also Fletcher v. Anderson*, 27 Kan.App.2d 276, 3 P.3d 558 (2000) (no claim where defendant returned vehicle to his half-brother, who owned the vehicle); and Restatement (Second) of Torts § 308, comment a (the

---

[2] *See also* Restatement (Second) of Torts § 390 (one who supplies a chattel for the use of another whom the supplier knows or has reason to know to be likely to use it in a manner involving unreasonable risk of physical harm to others is subject to liability).  *See also id*., Comment a ("The rule stated applies to anyone who supplies a chattel for the use of another. It applies to sellers, lessors, donors or lenders, and to all kinds of bailors, irrespective of whether the bailment is gratuitous or for a consideration.")

words "under the control of the actor" are used "to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity.").

Werner's evidence that Cohen held title to the tractor involved in the accident would normally be sufficient to preclude a claim for negligent entrustment, because it would be evidence that Cohen's right to possess and use the vehicle was superior to Werner's.  But plaintiff has cited evidence of an operating agreement between the defendants under which Cohen agreed to "make available motor vehicle equipment" to Werner – including the tractor at issue – and to furnish Werner "the exclusive possession, use and control of the EQUIPMENT that [Werner] may require to fulfill requirements placed on it by all applicable regulations;..." Doc. 71, Exh. 6 at 1-2.  As plaintiff points out, 49 C.F.R. § 376.12(c)(1) provides that a lease agreement required by the FMCSR shall provide that "the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease."  *See also* 49 U.S.C. § 14102(a)(4) (Secretary may require motor carrier that uses vehicles not owned by it to have control of and be responsible for operating these motor vehicles in compliance with the regulations).  The court also notes that title to the truck was previously held by Werner, and Werner is listed as a lienholder on the title.  With the exception of the defendants' operating agreement, none of the circumstances showing the parties' arrangement or understanding or their course of conduct are set forth in the summary judgment motion.  Under the circumstances, the court cannot say as a matter of law that Werner did not have "control" of the Freightliner at the time of its entrustment to defendant Cohen.  As defendant recognizes, it is the right to control,

6

not ownership, that is determinative under Kansas law.  *See Burns v. Federated Mut. Ins.,* 2007 WL 38025, *3 (D. Kan., Jan. 4, 2007).  *Cf. Jones v. D'Souza*, 2007 WL 2688332, *6 (W.D. Va. 2007).   The fact that title to the Freightliner was in Cohen's name, standing alone, does not preclude the possibility that Werner, by virtue of an agreement between the defendants and/or because of federal regulations, had a superior right to control or possession of the tractor at the pertinent time.  As such, defendant Werner's motion for summary judgment on the claim of negligent entrustment will be denied.

With regard to defendant's assertion that allowing a claim for negligent entrustment will somehow allow plaintiff to recover multiple or duplicative damages for the same injury, the court rejects that argument.  The instructions to the jury will ensure that the plaintiff "may not recover damages twice for the same injury simply because he has two legal theories...."  *See Rose v. Via Christi Health System, Inc.*, 276 Kan. 539, 78 P.3d 798 (2003) (Luckert, J. dissenting), *opinion modified on rehearing*, 279 Kan. 523, 113 P.3d 241 (2005).

II.  *Negligent Hiring and Retention Claim*.

The court finds the following facts to be uncontroverted for purposes of the instant motion.

1.  Plaintiff filed this action on December 10, 2007. (Dkt. No. 1).

2. Plaintiff filed two Amended Complaints, with the most recent Amended Complaint filed on March 11, 2008. (Dkt. Nos. 7, 15).

3.  In Plaintiff's Second Amended Complaint he alleged the following claims against Werner: negligence; negligence in hiring and retaining Cohen, negligently entrusting a truck to Cohen. (Dkt. No. 15 at ¶¶ 14, 21).

4.  Defendant Werner has admitted that it is vicariously liable for Defendant Cohen's operation of his vehicle on the date of the collision. (See Amended Answer filed contemporaneously herewith).

5.  Cohen was an independent contractor on behalf of Werner. (See Dkt. No. 17, ¶ 8).

6.  Cohen owned the tractor truck that he was driving. (See Title to 2001 Freightliner, attached hereto as Exhibit "A").  Werner owned the trailer that Cohen was hauling.

7, 8 & 9. [The court determines that these assertions are irrelevant to the motion.]

10.  Defendant Cohen's Driver Qualification file reflects that Werner complied with Federal Regulations in its hiring of Defendant Cohen. (See Cohen's Driver Qualification File, attached hereto as Exhibit "C").[3]

11.  Werner conducted a review of Cohen's driver record. (Id. at 0351-57; 0278; 0322-23; 0332-33).

12.  Werner conducted some investigation of Cohen's employment history. (Id. at 0299-07; 0334; 0337-46; 0358; 0336; 0347-50; 0314-15).

13.  Werner conducted a criminal background check on Cohen. (Id. at 0290-98).

14.  Werner verified Cohen's driver license qualification. (Id. at 0284-86).

15.  Werner verified Cohen's physical health. (Id. at 0289; 0316; 0317-19).

16.  Werner conducted a drug test on Cohen in July of 2000.  That drug test was negative. (Id. at 0309; 0312).  Cohen did not recall taking any other drug tests in his next seven years with

---

[3] Defendant further asserts that it complied with the regulations in retaining Cohen. Although plaintiff's response states that this fact is admitted, plaintiff proceeds to cite opinion testimony from his expert stating that Werner's failure to terminate Cohen violated Werner's duties under the FMCSR.  Because the record indicates there may be a genuine dispute as to this particular assertion, the court cannot say it is uncontroverted for purposes of summary judgment.

8

Werner.

17.   Werner tested Cohen's driving abilities. (Id. at 0335).

18.   On July 21, 2000, Werner completed its first review of Cohen.  Defendant Cohen
reported no citation within the prior 12 months and his motor vehicle report at that time did not
reveal any citation. (Exh. C at 0351).

19.[4]  Before his annual review on July 26, 2001, Cohen reported that he had received a
citation for speeding. Werner counseled Cohen on "obeying speed limits." (Exhs. C and D at
0352, 0816).

20.   Shortly before June 6, 2002, Cohen was involved in a chargeable accident related to
driving over ruts in a construction zone. Werner counseled Cohen in "being prepared for hitting
and driving over ruts in construction zones" and placed Cohen on 30 days of probation. (Exh. D
at 0817).

21.   Before his annual review on October 1, 2002, Cohen reported that he had received a
citation for failure to wear a seat belt. Werner counseled Cohen to "obey posted laws." (Exh. C
at 0353).

22.   In February 2003, Cohen was involved in a chargeable accident. Werner addressed

---

[4] Plaintiff's blanket denial of fact Nos. 19-32 (*see* Doc. 67 at 3) and his general reference
to deposition excerpts do not comply with D. Kan. R. 56.1 or Fed.R.Civ.P. 56(e)(2).  Because
plaintiff's inadequate response leaves the court unable to determine which portions of Nos. 19-
32 are actually controverted, those facts are deemed admitted for purposes of summary
judgment.  *See* D.Kan. 56.1(a) (all facts of the movant shall be deemed admitted unless
*specifically* controverted).  It is counsel's obligation to identify the specific facts of the movant
that are controverted, and to support such assertions by reference to the record.  It is also
counsel's job – not the court's – to set forth "a concise statement of material facts."  Copying
several pages of questions and answers from a deposition into a brief is not setting forth "a
concise statement of material facts."

this accident with Cohen on March 18, 2003. (Exh. D at 0818).

23.  In April, May and July 2003, Cohen was involved in a backing accident, a sideswipe accident and a rollover accident. As a result, Werner placed Cohen on 30 days of suspension. (Exh. D at 0819).

24.  On return to work, Cohen was required to successfully complete simulator and computer-based training, and Werner placed Cohen on one year of probation and suspended Cohen from his duties as a trainer for 180 days. (Exh. D at 0819).

25.  Before his annual review on August 12, 2003, Cohen reported that he had received a citation for speeding. Werner counseled Cohen on "obeying speed limits and being aware of laws in state." (Exhs. C and D at 0354 and 0820).

26.  Before his review on November 18, 2003, Cohen reported that he had received a citation for speeding. Werner counseled Cohen on "speed management." (Exh. C at 0355).

27.  Before his annual review on May 4, 2004, Cohen reported that he had received two citations for speeding. Werner discussed with Cohen Werner's policy on tickets. (Exhs. C and D at 0356 and 0821).

28.  On May 24, 2004, Cohen was involved in a chargeable accident. Werner addressed this accident with Cohen on May 25, 2005, required him to undergo remedial training on "visual search, hazard awareness and night driving" and placed him on 45 days of probation. (Exh. D at 0822).

29.  Before his annual review on November 14, 2005, Cohen reported that he had received a citation for speeding. Werner counseled Cohen on "speed and posted limits." (Exhs. C and D at 0357 and 0822A).

10

30.  On September 18, 2006, Cohen was involved in a chargeable accident when he hit the bottom of an underpass at eight miles per hour. As a result, Werner counseled Cohen on "constantly checking height [sic] till passed through" an underpass and placed him on 30 days of probation beginning On October 9, 2006. (Exh. D at 0823 and 0824).

31.  Additionally, Werner conducted an annual review with Defendant Cohen regarding his driving record. (See Computerized Printouts from Defendant Werner, attached hereto as Exhibit "D" at 0816, 0820, 0821, and 0822A).

32.  Defendant Werner reviewed Defendant Cohen's driving record on an annual basis to verify that Defendant Cohen was abiding by Defendant Werner's policies. (See Exh. C at 0320-0322, 0324-0328, and 0330-0331).

*Plaintiff's Additional Facts*.

Although plaintiff's response contains a section entitled "Additional Statement of Facts," plaintiff's failure to individually identify any facts makes it difficult to difficult to determine what facts he is relying upon.  For example, plaintiff's additional statement of fact number 1 states, "Della Sanders testified in her deposition as follows," followed by three pages of questions and answers from her deposition.  Doc. 67 at 4-7.  This type of "shotgun" response does not even come close to the specificity requirements of Fed.R.Civ.P. 56(e) or D.Kan.R. 56.1. To the extent the record provided by plaintiff discloses clear issues of material fact, the court will consider those issues for purposes of summary judgment.  The court is not obligated to go searching through the record on plaintiff's behalf, however, to compile the relevant facts.  *See Espinoza v. Coca-Cola Enterprises, Inc.*, 167 Fed.Appx. 743 (10th Cir. 2006) ("where the nonmovant failed to support his case with adequate specificity, we will not fault the court for not

11

searching the record on its own to make his case for him (nor will we take on that role of advocacy).")

Included in plaintiff's response is a summary of accidents and citations allegedly involving defendant Cohen both before and during the time he drove for Werner.  With a few exceptions, defendant does not appear to challenge the list of incidents, which is apparently taken from the report of plaintiff's asserted expert, Arthur Atkinson.  Doc. 69, Exh. 1.  *See also* Doc. 78 at 2.  Plaintiff also cites deposition testimony indicating that Werner had knowledge of plaintiff's driving record; that Werner had a guideline that a driver would not be hired if he had more than three moving violations in the previous three years; that after being hired, a driver's tickets and accidents were considered by Werner on a "case by case" basis and there was "no black and white rule" as to when a driver would be terminated; that Cohen testified no one from Werner ever said to him they were concerned about the number of tickets or accidents he got, no one never told him he might be fired, and Werner's conduct led him to believe his record was not a concern.  Plaintiff also cites opinion evidence of Arthur Atkinson, an asserted expert on safety standards for motor carriers, who states that the motor carrier industry has long had a "Rule of Three" providing that a driver with more than three citations and/or preventable accidents in the prior three years is considered highly questionable for employment, and that in his opinion Werner violated this standard by hiring Cohen.  He also opined that although Werner's initial attempts at training and suspension were appropriate, Cohen's continued violations or accidents showed that Werner's steps were insufficient and that Cohen's conduct warranted termination several years prior to the instant accident.  He opined that Werner's failure to terminate Cohen despite knowledge of his ongoing record violated

Werner's duty under 49 CFR §§ 390.11 and 391.25.

Werner argues that courts have granted summary judgment on negligent hiring claims when there is evidence the employer complied with federal regulations on hiring. *Citing, inter alia, Hutcherson v. Progressive Corp.*, 984 F.2d 1152 (11th Cir. 1993). It contends plaintiff has cited no evidence of any failure to comply with the regulations. Werner further contends "the evidence demonstrates that Werner thoroughly investigated Cohen's driving record and background prior to hiring him; Werner checked the states wherein Cohen had obtained a driver's license; Werner conducted drug tests on Cohen; [and] Werner assessed Cohen's abilities as a driver." Doc. 65 at 9. After discussing defendant Cohen's driving record, including accidents and violations, Werner asserts that it neither authorized nor ratified such conduct, pointing out that it "counseled" Cohen on several occasions, placed him on probation several times, and suspended him from driving on at least one occasion. It contends it reviewed Cohen's driving record on an annual basis to verify that he was complying with Werner's policies and with the FMCSR. It argues there is no evidence that it negligently hired or retained Cohen, or that any such failure was a cause of the accident in question. Additionally, Werner says a majority of jurisdictions hold that when a corporation admits vicarious liability, a plaintiff may not pursue a cause of action for negligent hiring and supervision. Although it concedes Kansas has adopted the minority view, citing *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 961 P.2d 1213 (1998), Werner again argues that allowing plaintiff to rely upon a negligent hiring or retention theory despite Werner's admission of vicarious liability would allow plaintiff "to recover double damages for the one collision...." Doc. 65 at 15.

Plaintiff, on the other hand, argues that defendant Cohen demonstrated a longstanding

pattern of unsafe driving, as shown by what plaintiff says were 14 accidents and 11 moving violations in nine years.  Doc. 67 at 21-22.  Plaintiff contends Werner was aware of Cohen's record from its various reviews, and says it knew or should have known its disciplinary measures were not working. Moreover, plaintiff points out that Cohen testified Werner never gave him a warning, never told him it was unhappy with his driving, and never expressed concern or indicated that he might be fired.  Plaintiff contends this shows that Werner was willing to expose the public to an unnecessary risk from an unsafe driver.  As for Werner's alleged compliance with the FMCSR in hiring Cohen, plaintiff says there is no authority holding that compliance with the regulations alone precludes a claim for negligent hiring.  Finally, plaintiff points out that Kansas law allows a claim for negligent hiring or retention even where the principal has admitted vicarious liability, and he says Kansas comparative fault laws make defendant's concern about "double recovery" baseless.  *Id*. at 27.

   *Discussion*.

   "Kansas has long been associated with the majority of states recognizing an action for negligent hiring and/or retention of an unfit or incompetent employee."  *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 590-91, 682 P.2d 653 (1984).  The doctrine provides that an employer has a duty to use reasonable care in the selection and retention of employees, and that it breaches this duty when it hires or retains employees that it knows or should know are incompetent.  *Id*. at 590 (citations omitted).  To be liable, "the employer must, by virtue of knowledge of his employee's particular quality or propensity, have reason to believe that an undue risk of harm exists to others as a result of the continued employment of that employee; and the harm which results must be within the risk created by the known propensity...."  *Thomas v. County Com'rs. Of Shawnee*

14

*County*, 198 P.3d 182, 194 (Kan.App. 2008) (*citing Hollinger v. Stormont Hosp. & Training*

*School for Nurses*, 2 Kan.App.2d 302, 307, 578 P.2d 1121, *rev. denied* 225 Kan. 844 (1978)).

*See also* Restatement(Second) of Torts § 411 (employer may be liable for harm caused by lack

of care in employing contractor).

      Plaintiff has cited evidence that at the time of his application with Werner, defendant

Cohen had had approximately five preventable accidents and two traffic violations since June of

1997.  He  applied with Werner on July 21, 2000.[5]  After Cohen signed on with Werner, there is

evidence that he received a citation for failure to yield in May 2001;  a speeding citation in

February or March 2002; a chargeable accident in May or June 2002 related to driving over ruts

in a construction zone; a citation in July 2002 for failure to use a seat belt; a chargeable accident

in February or March 2003; a chargeable backing accident in April 2003; a sideswipe accident in

May 2003; a rollover accident in July 2003; a speeding citation in August 2003; speeding

citations in January and April of 2004; citation for failure to weigh at a weigh station in August

2004; an accident in February or March 2005; a speeding citation in August 2005; a speeding

citation in May 2006; and a chargeable accident in September or October of 2006 when he hit

the bottom of an underpass at approximately 8 miles per hour.

      Viewing the evidence in the light most favorable to the non-moving party, as the court

must on a motion for summary judgment, a reasonable jury could find that Werner was aware of

---

    [5] Plaintiff's expert cites 8 preventable accidents and two moving violations in the three
year period prior to plaintiff's application with Werner.  Doc. 69, Exh 1 at 6.  The court cannot
confirm these numbers, however, because plaintiff has not cited and attached the underlying
source documents in any sort of understandable fashion.  Werner, in its Reply, asserts that three
incidents in 1997 occurred more than three years prior to Cohen's employment with Werner and
therefore should not be counted.   It also contends that plaintiff has listed a 1999 accident in
South Carolina twice.

a history of accidents and violations by Cohen from which it should have known that his employment as a truck driver would create an undue risk of harm.  With regard to the hiring decision, plaintiff has cited some evidence that Werner may have breached commonly accepted industry standards.  Plaintiff's evidence could support a finding that Werner should have looked at and given consideration to all of Cohen's prior violations and accidents, even if one or two of the incidents occurred just outside the three year window prior to his hire.  Cohen apparently listed five accidents between 1997 and 1999 on his 2000 application with Werner, as well as one speeding ticket.  *See* Doc. 84 at Werner 0278.  Even if its investigation and hiring of Cohen did not violate the requirements of the FMCSR, as Werner contends, a jury could find that Werner breached its common law duty to use reasonable care in the selection of its agents.  And because the significance and seriousness of Cohen's violations and accidents are disputed factual matters, it is plausible that a jury drawing all factual inferences in plaintiff's favor could find that Werner knew or should have known from Cohen's history that his employment indicated an undue risk of a harmful accident.  Similarly, a reasonable jury viewing the evidence favorably to plaintiff could conclude that Werner's decision to retain Cohen despite his continuing violations or accidents violated Werner's common law duty to use reasonable care and its specific duties under the FMCSR.  Werner points out that none of Cohen's prior accidents involved injuries, and it argues that his history did not suggest a likelihood of injury.  Whether or not Cohen's record made it foreseeable that his continued driving presented an unreasonable risk of harm to the public is, under the facts presented, a question of fact for a jury to determine.  On this record, a jury might reasonably conclude that defendant Cohen's fairly consistent involvement in accidents and moving violations evinced a pattern of carelessness that was at least a "red flag"

16

for future accidents.  It is also a question of fact for the jury to determine whether the harm in the

instant accident should be considered within the zone of danger created by Cohen's alleged

propensity for carelessness.  And although it is true that Werner took disciplinary steps against

Cohen on several occasions, at the same time there is evidence from which a jury could conclude

that Werner failed to act reasonably by allowing a continued pattern of accidents and violations

by Cohen over an extended period of time.  According to Cohen's deposition testimony, no one

at Werner ever told him his record was a problem and no one ever suggested he could be

terminated if he did not improve.  As plaintiff's expert noted, Werner repeatedly employed

counseling, probation or suspension, but defendant Cohen "continues on dutifully year after year

every single year except 2000 doing the same thing he has always done since 1997."  A jury

could find that Werner should have concluded at some point that its chosen discipline was not

resulting in a substantial change in behavior, and that the exercise of reasonable care for public

safety required that it terminate Mr. Cohen's authority to drive on Werner's behalf.  In sum,

defendant is not entitled to summary judgment on plaintiff's claim for negligent hiring and

retention.

  With regard to Werner's repeated suggestion that it is improper to allow a claim for

negligent hiring/ retention when *respondeat superior* liability is admitted, Kansas law clearly

provides otherwise.  *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 334-35, 961 P.2d

1213 (1998) ("Because the torts of negligent hiring, retention, or supervision are recognized in

Kansas as separate torts that are not derivative of the employee's negligence, an admission that

the employee was acting within the scope of his or her employment does not preclude an action

for both respondeat superior and negligent entrustment or negligent hiring, retention, or

17

supervision."). *See also Patterson v. Dahlsten Truck Line, Inc.*, 130 F.Supp.2d 1228, 1232 (D. Kan. 2000). This does not mean, as defendant again suggests, that plaintiff will be able to recover duplicate compensatory damages if he persuades a jury that Werner was negligent. *See* Doc. 78 at 13. As plaintiff points out, a theory of direct negligence against Werner would allow the jury to compare the fault of both defendants and to determine the degree to which each contributed to the accident, but it would not entitle the plaintiff to recover multiple times for the same injuries.

III. *Punitive Damages*.

Defendant Werner next moves for summary judgment on plaintiff's claim against Werner for punitive damages. It points out that under K.S.A. § 60-3702(d), punitive damages may not be assessed against a principal for the acts of an agent "unless the questioned conduct was authorized or ratified by a person expressly empowered to do so on behalf of the principal...." Werner argues there is no evidence that it authorized Cohen to drive negligently in the manner alleged or that it ratified any such conduct. Doc. 64 at 7. It says that plaintiff's "generalized argumentative statements" – which it characterizes as "bobbing and weaving" – do not comply with D. Kan. Rule 56.1, and it says plaintiff has failed to cite any specific facts to show that it ratified Cohen's conduct. Werner again points out that it conducted a background check on Mr. Cohen prior to hiring him, and says it complied with the federal regulations. It also points out that it conducted annual reviews and imposed discipline on defendant Cohen. It thus argues there was no ratification or authorization. Moreover, Werner contends there is no evidence that its alleged ratification of Cohen's conduct proximately caused the accident.

In response, plaintiff argues that Werner authorized or ratified Cohen's conduct within

18

the meaning of Kansas law:  "Werner's managers knew of Mr. Cohen's conduct but continually

approved (authorized and ratified) Cohen's pattern of unsafe driving...."  Doc. 69 at 21.  Plaintiff

further argues that a "[c]ourse of conduct of repeated failures to terminate Cohen is evidence of a

reckless disregard by management about the imminence of eventual harm to the driving public

from Cohen's continued retention."  *Id*.  Plaintiff argues that Werner's managers had repeated

chances to terminate Cohen, but they authorized his conduct because they "wantonly chose

retention simply to avoid having to replace a driver" when they should have known that his

pattern of unsafe driving would eventually lead to a serious injury accident.  *Id*. at 22.  Werner's

conduct also amounted to "ratification" of Cohen's behavior, plaintiff contends, because

Cohen's pattern of conduct made it "foreseeable and predictable ... that Cohen would eventually

cause a serious injury accident."  *Id*.

> *Discussion*.

Subsections (c) and (d) of K.S.A. § 60-3701 provide in part as follows:

> (c) In any civil action where claims for exemplary or punitive
> damages are included, the plaintiff shall have the burden of
> proving, by clear and convincing evidence in the initial phase of
> the trial, that the defendant acted toward the plaintiff with willful
> conduct, wanton conduct, fraud or malice.

> (d) In no case shall exemplary or punitive damages be assessed
> pursuant to this section against:
> (1) A principal or employer for the acts of an agent or employee
> unless the questioned conduct was authorized or ratified by a
> person expressly empowered to do so on behalf of the principal or
> employer;

Prior to the enactment of K.S.A. § 60-3701, a corporation in Kansas could be subject to

punitive damages under a broader range of circumstances, including where:

> (a) a corporation or its managerial agent authorized the doing and

19

> manner of the act; (b) the employee was unfit and the corporation
> or its managerial agent was reckless in employing or retaining him;
> (c) the employee was employed in a managerial capacity and was
> acting within the scope of employment; or (d) the corporation or its
> managerial agent ratified or approved the act of the employee.

*See Smith v. Printup*, 254 Kan. 315, 336-37, 866 P.2d 985 (1993).  Thus, under the prior law, a corporation could be liable for punitive damages if it was "reckless in employing or retaining" the employee.  Section 60-3701 changed that rule, however, and specifically limited a corporation's liability for punitive damages for its employee's actions to those circumstances described in (a) (authorization) and (d) (ratification). *Id*.  *Smith* stated clearly that an employer's or principal's alleged negligent acts in hiring or retaining the employee/agent thus may not be advanced as a separate claim for punitive damages.  *Id*. at 337.[6]

The *Smith* court stated that "authorization" under 60-3701(d)(1) "may be either express or implied and generally is accomplished before or during the employee's questioned conduct.  It may be based on an express grant of authority or on a course of conduct indicating that the employee was empowered or given the right or authority to engage in the questioned conduct."  "Ratification" similarly "may be express or implied, and may be accomplished before, during, or after the employee's questioned conduct. It may be based on an express ratification or based on a course of conduct indicating the approval, sanctioning, or confirmation of the questioned conduct."

Even under the broad view of authorization and ratification in *Smith v. Printup*, plaintiff

---

[6] Plaintiff cites several cases such as *Flint Hills Rural Elec. Coop. Assn. v. Federal Rural Elec. Ins. Corp.*, 262 Kan. 512, 941 P.2d 374 (1997) for the proposition that a corporation may be liable for punitive damages for the tortious acts of a managerial agent.  There is no claim in this case, however, that defendant Cohen was a managerial agent of Werner.

20

has failed to cite evidence that Werner authorized or ratified Cohen's allegedly negligent conduct. Clearly, a viable claim of negligent hiring/retention requires some proof that the agent's known character or propensities made the injury "foreseeable" to the principal, and the court has already concluded that plaintiff has cited evidence to support such a claim. But the fact that an injury was foreseeable alone is not sufficient to support a punitive damage claim under K.S.A. § 60-3701(d)(1), as evidenced by the legislature's obvious exclusion of negligent hiring/retention from this section. The court sees no evidence here that could reasonably support a finding that Cohen was "given the right or authority" to drive recklessly or carelessly, or that Werner indicated its "approval, sanctioning, or confirmation" of such conduct. Plaintiff has not cited any evidence to show that Cohen's prior incidents were such as to put Werner on notice that an accident of this sort was imminent or highly likely to occur. The court notes there is no evidence that Cohen was ever previously involved in any injury accident. Werner conducted a background check on Cohen, conducted a drug test, conducted annual reviews, and generally made efforts to comply with the federal regulations. It is uncontroverted that Werner imposed various forms of discipline on defendant Cohen during his tenure. Although a jury might ultimately conclude that Werner's failure to take the further step of terminating his contract was unreasonable, it cannot be said that Werner sat and did nothing about Cohen's driving. *Cf. Smith v. Printup*, 254 Kan. 315, 344-45, 866 P.2d 985 (1993) (evidence that defendant knew of driver's safety violations but "did nothing to require his compliance," was evidence of authorization or ratification). Perhaps Werner did not go far enough, but it did make some efforts at disciplinary action, and discipline such as a 30-day suspension without pay clearly cannot be considered trivial. A misjudgment of this sort about the appropriate level of discipline might subject one to

21

liability for the harm caused thereby, but it does not show that the defendant authorized or ratified the misconduct.

IV.   *Conclusion*.

Defendant Werner's Motions for partial summary judgment on Negligent Entrustment Claim (Doc. 63) and Negligent Hiring and Retention (Doc. 65) are DENIED.  Defendant Werner's Motion for partial summary judgment on the Punitive Damage Claim (Doc. 64) is GRANTED.  IT IS SO ORDERED this  18th   Day of February, 2009, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge